UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ANDREEA DUMITRU,
                Defendant.

S1 18 Cr. 243 (LAK)

# THE GOVERNMENT'S REPLY
# IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Nicholas W. Chiuchiolo
Alison G. Moe
Robert B. Sobelman
Assistant United States Attorneys
– Of Counsel –

The Government respectfully submits this reply to defendant Andreea Dumitru's opposition to the Government's motion *in limine*. For the reasons set forth herein, the Government respectfully requests that the Court grant the Government's Motion *in Limine* in its entirety.

**ARGUMENT**

I. **The Defendant Should be Precluded From Eliciting Expert Testimony on the Common Experiences of the Roma or Gypsy Ethnic Group.**

In its motion *in limine*, Dkt. No. 42 ("Gov't Br."), the Government moved to preclude putative expert witness testimony concerning "the common experiences of Roma individuals in Romania and in certain parts of Europe and U.K.," on the basis that such testimony is irrelevant and its probative value, if any, is substantially outweighed by all of the concerns raised by Federal Rule of Evidence 403: unfair prejudice, confusion of the issues, and misleading the jury, among others. (Gov't Br. at 6-10.) In her opposition brief ("Dumitru Br."), the defendant argued that expert testimony concerning poor treatment of members of the gypsy[1] ethnic group is relevant because: (i) general descriptions of mistreatment of Roma are set forth throughout the asylum applications filed by the defendant; (ii) evidence that Roma are, in fact, mistreated supports the notion that the false statements in the asylum application arose from carelessness; and (iii) proof of the truthfulness of general statements about treatment of Roma minimizes the import of the false specific instances of mistreatment contained in the same applications. The defendant is wrong for at least the following reasons.

---

[1] The Government has used the term "gypsy" in its briefing because it is the same term used by the defendant in the asylum applications she filed. The Government understands the term "gypsy" to be synonymous with "Roma."

### A. The Proposed Expert Testimony is Irrelevant to the Defendant's False Statements.

Evidence of the general mistreatment of members of the gypsy ethnic group is irrelevant to the charges contained in Count One and Count Two of the Superseding Indictment. As to those charges, the Government intends to prove at trial that the defendant knowingly made false statements about specific instances of misconduct experienced by her clients. That is, false statements about <u>specific</u> events experienced by <u>specific</u> individuals.

There is a plain distinction between statements concerning specific incidents and individuals, *e.g.*, "while in police custody, [my father] was bitten and threatened badly," and general statements about the common experiences of Roma as a group, *e.g.*, "In Romania, the Gypsies are considered the lowest class of the society and are mostly used for agricultural labor purposes." As to the former, the Government will prove that the defendant knowingly made false statements about specific instances of misconduct through, among other evidence, witness testimony of former clients who are expected to testify that the specific instances of misconduct set forth in their asylum applications never happened to them and that they never told the defendant that those things happened to them.

The government does not intend to elicit evidence or make arguments that the generic descriptions of persecution contained in the asylum applications are inconsistent with the experiences of some members of the gypsy ethnic group at some point in time.[2] The issue at trial is not whether some members of the gypsy ethnic group in Romania were persecuted at

---

[2] The Government presently intends to call a cooperating witness who we expect will testify that he is a member of the gypsy ethnic group and that the statements contained in the asylum application filed by the defendant on his behalf are not truthful as to him and do not accurately reflect his experience as a gypsy in Romania.

some point in time.  Rather, the issue for the jury is whether the generic statements about persecution were truthful representations about the applicants' experiences on Romania.

In any event, the probative value of expert testimony concerning the common experiences of Roma—and there is none—is substantially outweighed by, among other things, unfair prejudice, confusing the issues, misleading the jury, and undue delay.  Evidence concerning the poor treatment of members of the gypsy ethnic group is clearly designed to engender juror sympathy and will district jurors from the issues properly before the jury.

### B. The Proposed Expert Testimony is Irrelevant to Whether the Defendant Knowingly Made False Statements.

The defendant argues testimony that members of the gypsy ethnic group are, in fact, treated poorly "will support the inference" that the defendant's false statements concerning specific acts of mistreatment experienced by her clients were the "result of accident and carelessness."  (Dumitru Br. at 4.)   This argument is nonsensical and, in any event, incorrect as a matter of law.  It simply cannot be the case that the defendant "accidentally" lied about very specific instances of misconduct experienced by her clients because, on the whole, members of the gypsy ethnic group are mistreated.  The general statements about mistreatment of Roma in asylum applications prepared by the defendant will not be at issue in this trial and therefore the veracity of those statements and the defendant's mental state as to those statements is irrelevant.  What matters is that the defendant lied about the specific experiences her clients had.

### C. The Proposed Expert Testimony is Irrelevant to Whether the Defendant's False Statements Were Material.

Finally, the defendant argues that expert testimony concerning the general mistreatment of Roma is relevant to materiality because such testimony will help demonstrate that the defendant's clients had a "well founded fear of persecution on account of race, religion,

nationality, membership in a particular social group, or political opinion." (Dumitru Br. at 4.) Whether the defendant's clients had a well-founded fear of persecution based on the general mistreatment of Roma is irrelevant to whether the defendant knowingly made false statements about specific instances of mistreatment. Again, the Government intends to prove at trial that the defendant knowingly made false statements concerning <u>specific</u> instances of misconduct experienced by <u>specific</u> individuals. Accordingly, only the materiality of those specific statements is properly before the jury.

### D. The Defendant Should be Precluded From Offering Expert Testimony About Common Practices Among Immigration Attorneys that are Inconsistent with the Law.

In footnote one of her opposition brief, the defendant argues that she should be permitted to elicit expert testimony about common practices among immigration attorneys even if those common practices are "inconsistent with the law" because such evidence supports the inference that the defendant did not act willfully. "Everyone was doing it" is an improper defense. In any event, the plain and unambiguous warning on every asylum application that the preparer can be subject to prosecution for knowingly making false statements vitiates any willfulness defense here. Accordingly, testimony concerning common practices among immigration attorneys is irrelevant to the extent those alleged common practices are inconsistent with the law.

## II. Credibility Determinations By Third Parties Are Not Admissible

Evidence or argument about the out-of-court conclusions of immigration officers or judges should be precluded. As an initial matter, the credibility findings by those officials took place after—sometimes years after—the defendant filed the asylum applications at issue on behalf of the subjects of the interviews or hearings. Therefore, the officials' conclusions could not have affected the defendant's state of mind at the time the applications were filed. Such

opinions therefore would be of very limited probative value, if any, and likely would confuse the jury. *See* Fed. R. Evid. 403.

The hearsay exception provided in Federal Rule of Evidence 803(1) would arguably apply only if the asylum officer actually said to an applicant who testified at trial that he or she was credible during that person's interview or hearing. The Government is not aware of any such statements in relation to any of the defendant's clients. Indeed, the Government's understanding is that asylum officers, as a matter of practice, do not provide feedback concerning credibility to applicants or their attorneys during the course of an interview. Moreover, the only witness the Government presently intends to call at trial who reached the stage of an interview with an asylum officer was found not credible.

## III.     The Defendant's Personal Life Is Irrelevant to the Questions Before the Jury

According to the defendant's brief, the trial defense will be that the defendant was merely careless and negligent, and thus she is not responsible for the fraudulent applications she personally submitted to judges when she appeared at immigration court hearings on more than a hundred occasions and filed the applications in her own name as the attorney of record. To the extent the defendant advances this defense at trial, the Government agrees that the defendant may elicit testimony about how often the defendant was present at her law office, and about the frequency of her interactions with her staff. However, if this defense centers on whether or not the defendant was at work, then the bounds of the relevant testimony should be limited to whether the defendant was at work frequently or not. What the defendant was doing when she was *not* working at her law practice is irrelevant to this defense, because it makes no difference whether the defendant was inattentive to her law practice because of her family life, or for some other reason. Accordingly, the defense should be precluded from eliciting facts about the

defendant's personal circumstances, which are irrelevant to the questions the jury will be asked to resolve at this trial.

In addition, if the defendant argues at trial that she lacked the requisite intent to commit this crime because she was too busy with other commitments, the Government should be permitted to rebut this argument by offering evidence relating to the defendant's May 31, 2018 conviction for Criminal Tax Fraud in the Third Degree. During the same period as the charged conduct in this case, the defendant participated in a multi-million dollar tax fraud scheme, and she subsequently pleaded guilty to felony tax fraud as a result of this conduct. The defendant participated in this tax fraud scheme: (1) during the same time period as the charged conduct in this case; (2) in the same office where the defendant ran her law practice and filed the fraudulent asylum applications at issue here; (3) with the assistance of some of the same office staff the defendant tasked with filing the fraudulent asylum applications in this case. In other words, the defendant cannot have been too busy with outside commitments to commit fraud, because she participated in a separate fraud scheme in the same office space during the same time frame.[3] The Government does not intend to offer evidence relating to the defendant's tax fraud conviction in its case in chief. However, if the defendant intends to argue to the jury that she was too busy with her family life to commit fraud, the Government should be permitted to present these facts to the jury in rebuttal.

---

[3] In fact, a witness would testify that when the Government began approaching the defendant's employees for interviews, the defendant began speculating about the subject matter of the investigation. During conversations about why federal agents might be approaching office staff, the defendant commented that she was likely being investigated for either her tax fraud scheme or her asylum practice.

**IV. The Defendant's Payment Arrangement With Her Employees**

The defendant argues that the defendant's payment arrangement with her employees is irrelevant, because the relationship with her employees is not an issue at this trial. At the same time, the defendant asserts that her trial defense will be to claim that her employees are responsible for the fraudulent asylum applications the defendant filed while the defendant was not in the office. The Government expects that the office employees will testify that they filed these applications—containing identical personal statements of persecution and forged signatures—at the defendant's express direction. As a result of this trial defense, the jury will be asked to choose between these competing narratives. Accordingly, the dynamic between the defendant and her employees will be squarely at issue at this trial, regardless of the fact that defendant is not charged with participating in a conspiracy. Evidence that provides context for the defendant's relationship with her employees is therefore relevant, and should be admitted.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's Motion *in Limine* in its entirety.

Dated: New York, New York
November 1, 2018

                Respectfully submitted,

                GEOFFREY S. BERMAN
                United States Attorney for the
                Southern District of New York

By:   s/
      Nicholas W. Chiuchiolo
      Alison G. Moe
      Robert B. Sobelman
      Assistant United States Attorneys
      Tel.: 212-637-1247/2225/2616