

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 11, 2018

**BY ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Andreea Dumitru*, S1 18 Cr. 243 (LAK)

Dear Judge Kaplan:

    The Government respectfully submits this letter in opposition to the defendant's request to introduce defense exhibits DX C through DX J. (Nov. 10, 2018 Dumitru Letter, Dkt. No. 54.) For at least the reasons set forth below, the Court should preclude admission of the proposed defense exhibits.

## Background

    Mollie Isaacson, the acting director of the Newark Asylum Office, testified about asylum generally, the processes by which individuals apply for asylum, and how asylum officers review asylum applications. During her direct examination, the Government showed Ms. Isaacson two examples of asylum applications that the defendant had prepared and filed with immigration authorities. In particular, Ms. Isaacson was asked to look at the personal stories of persecution contained in those asylum applications. For both examples, Ms. Isaacson was asked what she would do if she learned that near identical stories of persecution were contained in multiple other asylum applications for unrelated individuals. Ms. Isaacson gave the following responses:

> It would be cause for concern. We -- any time there is a similar detail presented in multiple claims, we might seek the assistance of our internal fraud unit and it might lead us depending on the facts of the case to call into question other aspects of the truthfulness of the whole claim and other aspects of the claim.

(Dkt. 54, Ex. B at 54:2-12.)

                            *        *        *

> It would raise our concerns that this was a pattern that these depiction of the facts that had occurred for a person were not actually true. We'd probably refer these cases to our fraud unit, and if there was indications that concerns about the

truthfulness of the individual application, we may refer that case in immigration court.

(*Id.* at 55:13-24.)

After Ms. Isaacson's direct testimony, the defense produced to the Government proposed defense exhibits DX C through DX G. Other than DX-E, these exhibits are immigration documents associated with two of the defendant's former clients: Mariana Oaie and Diamant Vaduva. The defendant filed an I-589 asylum application for Ms. Vaduva in December 2012 (*see* GX 707) and an I-589 asylum application for Ms. Oaie in March 2014 (*see* GX 660). Both asylum applications contained nearly identical personal stories of persecution that also were in more than 70 asylum applications that the defendant filed.

The defendant seeks to introduce immigration documents that the defendant submitted to immigration officials years after she filed Ms. Oaie's and Ms. Vaduva's fraudulent asylum applications.[1] In particular, DX C purports to be an affidavit of Ms. Oaie that was signed in March 2016, two years after the defendant filed Ms. Oaie's asylum application, and DX I purports to be an affidavit of Ms. Vaduva that was signed in August 2016, nearly three-and-a-half years after the defendant filed Ms. Vaduva's asylum application. The immigration courts ultimately granted asylum to both Ms. Oaie and Ms. Vaduva. (*See* DX D and DX J.)

The defendant seeks to admit DX C, D, I, and J on the purported bases that they impeach the reliability of Ms. Isaacson's testimony and they go the "ultimate issue in the case – the question of whether allegedly false statements in I-589s submitted by Ms. Dumitru's law office were material." (Dkt. No. 54 at 4-5.)

The defense also seeks to admit DX E, a 38-page "Romanian Human Rights Report" published by the United States Department of State in 2017 (the "2017 Report"). The defendant argues that the 2017 Report somehow is relevant to the defendant's criminal intent when she filed the fraudulent asylum applications—a time period that predates the publication of the 2017 Report—and that the report allegedly bears on the materiality of the false statements at issue.

The Government respectfully submits that the proposed defense exhibits—DX C, D, E, I, and J—are inadmissible for the reasons set forth below.

---

[1] After consultation with defense counsel, the Government intends to offer GX 707, which includes within it DX F, G, and H, at the next appropriate moment at trial. Therefore, the defendant's motion with respect to DX F, G, and H should denied as moot. In any event, once GX 707 is admitted, DX F, G, and H should be precluded as needlessly cumulative (as the Court ruled with respect to DX A and B). *See* Fed. R. Evid. 403.

## Argument

### A. The Proposed Defense Exhibits Are Not Probative of Materiality.

The defendant argues that the defense exhibits undercut the Government's proof of materiality because the exhibits demonstrate that, notwithstanding that these two asylum applications contained false statements, Ms. Oaie's and Ms. Vaduva's claims ultimately were granted. To be probative of materiality, the defendant would need to make a factual showing that the immigration judges who adjudicated Ms. Vaduva's and Ms Oaie's asylum applications had knowledge that the personal narratives of persecution contained in their asylum applications were false or that the same narratives were in dozens of other asylum applications. In other words, proof that the immigration judges knew the asylum applications contained false statements when they granted the asylum claims. There is no such proof here. Therefore, these documents cannot be offered to show that the false statements in the asylum applications were immaterial to the judges' decisions.

Moreover, the proposed defense exhibits are inadmissible hearsay if offered as evidence that the false statements at issue are immaterial. The defendant argues that the false statements in the asylum applications she filed were immaterial because, in some in instances, she subsequently submitted truthful affidavits, *e.g.*, DX-C and DX-I. This theory would require that the affidavits be offered for their truth.

In any event, the defendant's argument misconstrues the materiality requirement. The Government need not prove that the false statements at issue influenced the decision-makers' ultimate decision of whether to grant asylum. Rather, the Government need only prove that the false statements are capable of influencing *any* decision. (*See* Gov't's Requests to Charge, Nos. 9 and 15, Dkt. No. 36.) Thus, the Government can meet its burden through proof that the false statements at issue were capable of influencing a decision other than the ultimate decision of whether to grant asylum. Permitting the defendant to suggest otherwise to the jury would be misleading, confusing, and contrary to law.

### B. Defense Exhibits C and I are Inadmissible Hearsay If Offered to Establish the Defendant's Intent.

The affidavits of Ms. Oaie (DX C) and Ms. Vaduva (DX I), which were submitted years after the defendant filed their respective asylum applications, are hearsay that do not fall within any exception. These affidavits cannot be offered to establish the defendant's intent unless they are improperly admitted for their truth. The defendant cannot argue that her intentions were pure on the grounds that she intended to later supplement her false filings with truthful submissions, unless she offers those later submissions for the truth of the statements contained in those materials. In other words, it makes no difference that the defendant submitted additional materials later on in the asylum process unless those materials were, in fact, true. Unless the defendant—or Ms. Oaie or Ms. Vaduva—testify that those submissions contained truthful statements, the affidavits that the defendant intends to offer as exhibits are hearsay and cannot be admitted for their truth. *See* Fed. R. Evid. 802. Unless these documents are offered for their truth, they are irrelevant to show the defendant's knowledge or intent at the time the asylum applications were filed years earlier,

and their probative value, if any, would be far outweighed by the risk of confusion. *See* Fed. R. Evid. 402, 403.

In any event, evidence that the defendant filed purported truthful affidavits years after she filed the fraudulent asylum applications does not negate her criminal intent. The crime charged in Count Two of the Superseding Indictment requires that the defendant acted willfully.[2] An act is done willfully if it is done with an intention to do something the law forbids, that is, with a bad purpose to disobey the law. (*See* Gov't's Requests to Charge, No. 17, Dkt. No. 36.) If the defendant knew it was a crime to make a false statement in an asylum application—which she must have in light of the unambiguous admonition contained in every asylum application—it is not a proper defense to argue that she intended to supplement the application with truthful information years later. Notably, the defense does not, and cannot, argue that the defendant recanted the fictitious personal narratives of persecution when she filed the supplemental materials.

### C. The Proposed Exhibits Are Improper Impeachment Material.

The proposed defense exhibits are not admissible as impeachment material, because they do not contradict Ms. Isaacson's testimony. Ms. Isaacson testified as to what she would do if she learned that identical stories of persecution appeared in multiple asylum applications: "we *might* seek the assistance of our internal fraud unit and it *might* lead us, depending on the facts of the case, to call into question other aspects of the truthfulness of the whole claim . . . ." (Dkt. 54, Ex. B at 54:2-12 (emphases added).) Ms. Isaacson did not testify that an immigration official would, in every instance, deny an asylum application if that official learned that the same personal story of persecution in that application also appeared in dozens of other applications. Therefore, the fact that Ms. Vaduva and Ms Oaie ultimately obtained asylum, despite the fact that the defendant appears to have submitted asylum applications on their behalf containing false statements, does not call into question the reliability of Ms. Isaacson's testimony.

Even if the Court were to construe Ms. Isaacson's testimony as standing for the proposition that an asylum claim can *never* be granted if the adjudicator learns that the original asylum application contained false statements—something Ms. Isaacson did not say—the proposed defense exhibits still would not "call into question" Ms. Isaacson's testimony. The defense exhibits establish only that (1) additional materials were submitted to the immigration court, and (2) the immigration court ultimately granted the client asylum. Nothing in these documents suggests that the immigration judge knew that the original claim contained falsehoods when the judge ultimately granted asylum, or provide any insight into the judges' decision-making or deliberative processes.

### D. The 2017 State Department Report Is Inadmissible Under Rules 402 and 403.

The defense seeks to admit the 2017 Report on the purported bases that it is relevant to materiality and willfulness. As to materiality, the defendant argues that the 2017 Report is evidence the jury can rely on in finding that the defendant's clients had well-founded fears of

---

[2] Asylum Fraud, charged in Count One of the Superseding Indictment, does not require a showing of willfulness. *See* 18 U.S.C. § 1546(a).

returning to Romania. Regarding willfulness, the defendant argues that the 2017 Report is proof that the fictitious personal narratives of persecution at issue are consistent with the experiences of some members of the Gypsy ethnic group. The defendant is wrong.

Evidence of the general discrimination experienced by members of the Gypsy ethnic group is not probative of any triable issue properly before the jury. The issue before the jury is not whether some members of the Gypsy ethnic group have experienced mistreatment. Rather, the issue is whether the defendant made false statements about *specific* instances of mistreatment with respect to *specific* individuals, that is, her clients. The 2017 Report does not appear to mention or refer to any of the defendant's clients. Thus, the 2017 Report is not relevant to the issues before the jury. *See* Fed. R. Evid. 402.

The 2017 Report also is irrelevant to the defendant's criminal intent. As an initial matter, the 2017 Report appears to postdate the vast majority, if not all, of the offense conduct and therefore could not have informed Ms. Dumitru's intent at the time.[3] Moreover, there is no evidence that the defendant even read the 2017 Report and was cognizant of its substance. In any event, the defendant's general knowledge of mistreatment of Gypsies in Romania is not a proper defense to making false statements about *specific* instances of mistreatment against *specific* individuals. In other words, it is not a proper defense to argue that although the stories of mistreatment were untrue for the defendant's clients, they might have been true for some other people.

Finally, even if the 2017 Report were relevant to the materiality of the false statements or the defendant's criminal intent—which it is not—admission of the report would raise all of the concerns implicated by Rule 403: unfair prejudice, confusion of the issues, and misleading the jury, as well as undue delay and waste of time. In particular, a 38-page report about discrimination experienced by members of the gypsy ethnic group would only serve to inflame jurors' emotions and distract them from the issues properly before them.

---

[3] Aside from being titled a "2017" report, the date of its publication is not apparent from the document or the website on which it is found.

For these reasons, the Government respectfully requests that the Court preclude the admission of DX C, D, E, I, and J.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Nicholas W. Chiuchiolo
Alison G. Moe
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1247/2225/2616

cc: Justin Sher, Esq. (by ECF)
Allegra Noonan, Esq. (by ECF)
Jeffrey Hoffman, Esq. (by ECF)